IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

SCOTT E. SMITH                                )
                                              )        Case No: 4:07-CV-33
v.                                            )        MATTICE/CARTER
                                              )
MICHAEL J. ASTRUE,                            )
        Commissioner of Social Security       )

REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking

judicial review of the final decision of the Commissioner denying the plaintiff a period of

disability, disability insurance benefits, and supplemental security income under Title II and Title

XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.  This matter was referred to

the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil

Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion

for Judgment on the Administrative Record (Doc. 13) and defendant's Motion for Summary

Judgment (Doc. 17).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be

AFFIRMED insofar as it denies Plaintiff a period of disability and disability insurance benefits

under Title II, however,  I RECOMMEND the decision of the Commissioner be REVERSED

and REMANDED under Sentence Four of 42 U.S.C. § 405(g), for further proceedings consistent

with this Report and Recommendation, as to Plaintiff's request for Supplemental Security

Income benefits under Title XVI.

1

## Administrative Proceedings

Plaintiff protectively filed an application for disability insurance benefits on April 28, 2005, alleging he became disabled on April 12, 1996 (Tr. 49-51). Plaintiff also filed an application for supplemental security income on October 24, 2005. Plaintiff's applications were denied initially, upon reconsideration, and after a video hearing on July 20, 2006, before Administrative Law Judge (ALJ) James A. Sparks (Tr. 173-198). The ALJ found Plaintiff was not disabled because he was able to perform a significant number of jobs in the national economy (Tr. 18-19). The Appeals Council denied Plaintiff's request for review (Tr. 5-7). The ALJ's decision became the final decision of the Commissioner and is now the decision subject to judicial review.

## Standard of Review - Findings of the ALJ

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §423(d)(1)(A). The burden of proof in a claim for Social Security benefits is upon the claimant to show disability. *Barnes v. Secretary, Health and Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once, however, the plaintiff makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs*., 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs*., 790 F.2d 450 n. 4 (6th Cir. 1986).

After consideration of the entire record, the ALJ made the following findings:

> 1. The claimant met the insured status requirements of the Social Security Act through June 30, 1998.
>
> 2. The claimant has not engaged in substantial gainful activity since April 12, 1996, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).
>
> 3. The claimant has the following severe impairments: muscular dystrophy (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to: lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday, and can sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. He is limited in his ability to push/pull with the lower extremities. He can never climb ladders/ropes/scaffolds, and can occasionally climb stairs. He can occasionally balance, stoop, kneel, crouch, and crawl. He experiences mild-moderate pain with a mild-moderate loss of concentration. As per the objective evidence of record, he has no mental limitations. These exertional and non-exertional limitations are commensurate with a residual functional capacity for a significant range of light work and are consistent with the findings of the State Agency designated physicians.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.   The claimant was born on February 18, 1974, was 22 years old on the alleged disability onset date, and is currently 32 years of age, both which are defined as a younger individual age 18-44 (20 CFR 404.1563 and 416.963).

8.   The claimant has a General Equivalency Diploma (at least a high school education) and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a "disability," as defined in the Social Security Act, from April 12, 1996 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-19).

<u>Issues Presented</u>

Plaintiff asserts (1) the ALJ's finding that claimant retains the residual functional capacity to perform a significant range of light work is not based on substantial evidence, (2) The ALJ's finding that there are jobs that exist in significant numbers in the national economy that claimant can perform is not based on substantial evidence, and (3) the ALJ completely disregarded the medical opinion of claimant's treating medical doctor, Jane Howard, M.D (Plaintiff's Brief at 4-8).

I will analyze the facts and law to determine if there is substantial evidence to support the conclusion of the ALJ that plaintiff was not under a "disability," as defined in the Social Security Act, from April 12, 1996 through the date of the decision.

<u>Relevant Facts</u>

Plaintiff, born February 18, 1974, was thirty-two years old on the date the ALJ issued his decision (Tr. 17). Plaintiff claimed he was unable to work due to muscular dystrophy; Plaintiff also reported that he stopped working in April 1996 because he "went to prison" (Tr. 54). His date last insured for disability insurance benefits was June 30, 1998 - while he was incarcerated (Tr. 12, 177).

Plaintiff testified that he drove himself to the administrative hearing (Tr. 176). Plaintiff had a GED, and past work experience as a laborer, short order cook and greenhouse worker (Tr. 176). Plaintiff testified that his alleged onset of disability was in April 1996, and he had been incarcerated from June 1996 through April 2005 (Tr. 176).

Plaintiff testified that his movements at the time of his alleged onset of disability in 1996 were about the same as they were at that 2006 hearing (Tr. 183). He stated that in 1996 he could

5

stand 15 minutes at a time, and walk 25 yards, could not bend, stoop or squat (Tr. 180). Plaintiff

worked until he was incarcerated in June 1996. Although Plaintiff worked prior to being

incarcerated, he stated that his coworkers substantially helped him on the job (Tr. 184).

Plaintiff's counsel asked the ALJ to observe Plaintiff stand, walk and sit during the

administrative hearing (Tr. 183). Plaintiff walked with a cane (Tr. 183).

To treat his pain symptoms, Plaintiff took over-the-counter Goody powder and ibuprofen;

he did not take narcotic pain medication (Tr. 188). Plaintiff was able to drive and went grocery

shopping weekly; he did laundry and performed some household cleaning and preparing of meals

(Tr. 63).

Medical evidence prior to Plaintiff's date of last insured, June 30, 1998:

Plaintiff has reported gradual progressive weakness since the age of 13 (Tr. 100).

Plaintiff's diagnosis of probable limb-girdle muscular dystrophy was suggested by Dr. Koob in

February 1992 (Tr. 102-103, 108). At that time the history given indicated muscle weakness

with progressive difficulty with walking, climbing steps and getting out of chairs (Tr. 102). The

examination conducted showed marked atrophy of Plaintiff's quadriceps and increased size of

his calves. He had only mild weakness proximally in the uppers. He had prominent weakness,

particularly the quadriceps and the hamstring muscles in the lowers with hip flexors themselves

slightly weak but not severely so (Tr. 103). Also in February 1992, a cardiologist evaluated

Plaintiff's echocardiogram results reflecting a systolic murmur, without finding pathologic

reason (Tr. 107).

<u>Medical evidence after Plaintiff's date of last insured, June 30, 1998:</u>

In March 2004, Plaintiff's echocardiogram showed no evidence of any congenital heart disease (Tr. 145). Although trace to mild valvular insufficiency was noted, the images reflected normal cardiac size and function with an ejection fraction of 55% (Tr. 145).

On June 15, 2005, Timothy Fisher, D.O. consultatively examined Plaintiff for Tennessee Disability Determination Services (Tr. 150-154). Plaintiff reported a history of muscular dystrophy since age 13 (Tr. 150). Dr. Fisher noted Plaintiff had obvious muscular dystrophy; he had hypertrophy of the calves and atrophy of the proximal upper and lower extremities. There was mild difficulty getting from chair to examination table. Plaintiff's gait was abnormal, notable for use of his body to propel his legs forward. Plaintiff had to use his hands to push his [sic] self up to stand from a sitting position (Tr. 152). Dr. Fisher assessed limb-girdle muscular dystrophy and found Plaintiff had marked proximal weakness of the bilateral upper and lower extremities. He had hypertrophic gastrocnemius bilaterally, consistent with muscular dystrophy. He had a waddling gait (Tr. 153-154). He opined that Plaintiff would have difficulty performing jobs that require position changes from sitting to standing (Tr. 154). Dr. Fisher noted Plaintiff should be able to perform jobs requiring ambulation fairly well but further noted Plaintiff had atrophy of the pectoralis muscles bilaterally (Tr. 154). Dr. Fisher reported that Plaintiff would have difficulty lifting, given his proximal upper extremity weakness, especially with lifting above the chest region (Tr. 154).

In July 2005, state agency physician Richard Eales, M.D., reviewed the record medical evidence and completed a Physical Residual Functional Capacity Assessment (Tr. 155-160). Dr. Eales noted Plaintiff's knee injury in the Spring of 2005 due to a volleyball-playing injury (Tr.

157).  Dr. Eales specifically considered that Plaintiff was able to cook, shop, do light household chores and laundry, as well as enjoy fishing (Tr. 157).  Dr. Eales concluded that Plaintiff was able to occasionally lift 20 pounds, and frequently lift 10 pounds (Tr. 156).  Plaintiff could sit, stand or walk for a total of about six hours in an eight-hour workday with normal breaks (Tr. 156).  Dr. Eales found Plaintiff was limited in his ability to push and pull with his lower extremities (Tr. 156).  He concluded that Plaintiff could occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds (Tr. 157).  Dr. Eales further found that Plaintiff could occasionally balance, stoop, kneel, crouch and crawl (Tr. 157).  He found no manipulative, visual, communicative, or environmental limitations (Tr. 158-159).  Dr. Eales' review was based on the evidence of record through the June 15, 2005 consultative examination of Dr. Fisher (Tr. 157).

In August 2005, state agency physician Dr. Joe Allison reviewed the medical evidence, including reports from the Georgia State Department of Corrections (7/1997 through 4/2005), as well as Dr. Timothy Fisher's consultative examination of June 2005 (Tr. 35).  Dr. Allison concluded that there was insufficient evidence to show that Plaintiff's condition was disabling on any date through his date last insured of June 30, 1998 (Tr. 34-35).  In October 2005, state agency physician Dr. Evelyn Diehl also reviewed the medical evidence and affirmed Dr. Allison's finding of no disability. Once again, this finding was limited to the question of whether there was evidence to establish disability on or before June 30, 1998 (Tr. 32-33).

On December 9, 2005, Plaintiff was seen by Dr. David Greer at the Vanderbilt University Medical Center for a neurology consult.  The report was reviewed by Dr. Jane Howard.  Plaintiff reported gradually progressive weakness beginning at about the age of 13.  A 1980's muscle

biopsy confirmed a diagnosis of muscular dystrophy. An examination revealed marked scapular winging with arm abduction and the calves were large. It was noted that Plaintiff used a Gower's maneuver to arise from a chair. Gait was fairly stable with lumbar lordosis and mild foot drop bilaterally. The report notes a history, exam and muscle biopsy consistent with a diagnosis of muscular dystrophy. The suggestion was made for the use of a scooter for longer distances, but Plaintiff was not interested in one at that time (Tr. 163). The report notes muscle biopsy evidently showed limb girdle muscular dystrophy and further notes Plaintiff was incarcerated for nine years. During that time his muscle weakness progressed. Plaintiff complained of inability to bend over at the waist and return to upright position without using both hands. He also reported falling at home at least 15 times in the past month. At that time his records had not been received (Tr. 164). It was recommended that he get more equipment at home to reduce falling. Plaintiff was not interested in using a wheelchair or scooter at that time. It was recommended that he get a foot splint to reduce foot drop and ask for a shower chair and raised commode for his home (Tr. 165).

In June 2006, Vanderbilt University Medical Center Neurologist Jane Howard, M.D. assessed Plaintiff's residual functional capacity (Tr. 166-168). On neurological examination, Dr. Howard measured Plaintiff's extremity strength: deltoids 5/5, biceps 3/3, triceps 4/4, wrist extensors 5/5, grip 4+/4+, hip flexion 3/3, quads 2/2, hamstrings 3+/3+, and foot dorsiflexion 3-/3- (Tr. 167). She concluded that Plaintiff could not perform any physically demanding work, and noted that Plaintiff had no "training for desk work." Dr. Howard found that Plaintiff could not stand at all during a workday and could only sit for 60 minutes during a workday. She

further opined that Plaintiff could not bend, stoop or balance. Dr. Howard also noted that Plaintiff would need to occasionally elevate his legs during a workday (Tr. 166).

I note and find it significant that all of the opinions of state agency physicians were made before the evaluation of Dr. Jane Howard of the Vanderbilt Department of Neurology and therefore did not assess the findings of Drs. Howard and Greer based on the December 9, 2005 examination, or Dr. Howard's evaluation dated June 9, 2006.

Hearing testimony of the vocational expert:

Joann Bullard testified as a vocational expert at the administrative hearing, after hearing Plaintiff's testimony and reviewing the record (Tr. 193-197). Vocational Expert Bullard (VE Bullard) testified that although Plaintiff could not perform his past relevant work, he was able to perform the duties of a sorter, laundry folder and retail marker, which are light, unskilled jobs. The ALJ posed a hypothetical question to VE Bullard which assumed an individual of Plaintiff's age, education and vocational background, with a functional capacity for a range of light work that required only limited lower extremity pushing and pulling, and did not involve climbing ramps, ladders, ropes or scaffolds. The ALJ also restricted the hypothetical individual to occasional stair-climbing, balancing, stooping, kneeling, crouching and crawling. The ALJ further described an individual with mild to moderate pain with mild to moderate loss of concentration. VE Bullard testified that such an individual could not perform Plaintiff's past relevant work (Tr. 194).

VE Bullard listed examples of light exertional work available to such an individual.[1]  VE

Bullard identified examples of light jobs that such a person could do and gave the numbers in

which they existed in the state economy: sorter (3,710); laundry folder (7,756); and retail marker

(4,450) - she stated that this was not an exhaustive list of all jobs available (Tr. 194-195).   If the

limitations found in the June 9, 2006 assessment of Dr. Howard were accepted, VE Bullard

stated there were no jobs he could perform (Tr. 195).

Analysis

Disability prior to Date of Last Insured

 In order for Plaintiff to be entitled to Disability Insurance Benefits, he must prove that he

was disabled prior to the expiration of his insured status, June 30, 1998 (Tr. 12). *See Moon v.*

*Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).   Plaintiff, a younger individual, was diagnosed

with muscular dystrophy as a teenager. Nonetheless, he was able to work jobs as a laborer at a

sign company, a cook, and a laborer at a greenhouse until 1996, when he reportedly stopped

working because he "went to prison." (Tr. 54, 65).   Upon release, Plaintiff filed applications for

disability benefits, claiming that he was disabled due to muscular dystrophy.   However, no

physician of record opined that Plaintiff was unable to work prior to his date of last insured.

A claimant seeking disability benefits bears the burden of proving that he is disabled

within the meaning of the Social Security Act.   42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§

404.1512(a), 416.912(a); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).   To establish

---

[1]The ability to perform light work generally includes the ability to perform less exertional
sedentary work. 20 C.F.R. §§ 404.1567(b), 416.967(b).

disability, a claimant must show the existence of a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that renders him unable to engage in substantial gainful activity for at least twelve months. *See* 42 U.S.C. §§ 423(d)(1)(A), (2)(A). The record clearly shows Plaintiff suffers from a form of Muscular Dystrophy which is a progressively debilitating disease. Progressively increasing weakness was reported in February 1992 by Dr. Koob (Tr. 102) and in the December 9, 2005 examination by Dr. Greer and the June 2006 examination of Dr. Howard (Tr. 163,164). The medical record prior to Plaintiff's date of last insured, June 30, 1998, includes only the evaluation and treatment by Dr. Koop and certain very limited records from the Georgia prison system (Tr. 111-149).

Plaintiff's diagnosis of probable limb-girdle muscular dystrophy was suggested by Dr. Koob in February 1992 (Tr. 102-103, 108). At that time the history given indicated muscle weakness with progressive difficulty with walking, climbing steps and getting out of chairs (Tr. 102). The examination conducted showed marked atrophy of Plaintiff's quadriceps and increased size of his calves. He had only mild weakness proximally in the uppers. He had prominent weakness, particularly the quadriceps and the hamstring muscles in the lowers with hip flexors themselves slightly weak but not severely so (Tr. 103). Also in February 1992, a cardiologist evaluated Plaintiff's echocardiogram results reflecting a systolic murmur, without finding pathologic reason (Tr. 107). There was no assessment that his condition then prevented any employment.

At the time of the ALJ's decision, he had before him the June 2005 consultative evaluation of Dr. Fisher which showed greater restrictions but was seven years after Plaintiff's date of last insured. Other opinions which provide substantial evidence to support that part of the

decision of the ALJ finding Plaintiff not disabled prior to his date of last insured are the opinions of the non-examining state agency physicians, Dr. Eales, Dr. Joe Allison and Dr. Evelyn Diehl (Tr. 156-159, Tr. 34, 35 and Tr. 32, 33). Dr. Eales' opinion was that Plaintiff could work at a limited range of light work as of the date of his evaluation. Drs. Allison and Diehl only opined that based on the record before them (which included the opinion of Dr. Fisher), Plaintiff's condition was not disabling through the date of last insured, June 30, 1998 (Tr. 32-35).

In order to be entitled to Title II disability insurance benefits, Plaintiff must prove he was disabled on or before his date last insured. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (in order to be entitled to disability insurance benefits, claimant was required to show he became disabled on or before his date last insured). I agree with the Commissioner that Plaintiff has failed to submit medical evidence of his functional limitations as of his date last insured; the record does not contain sufficient medical evidence that Plaintiff's condition was disabling as of June 30, 1998 - including the medical records from his nine-year imprisonment.

A physical or mental impairment must be established by medical evidence consisting of signs, symptoms and laboratory findings, not only by a claimant's statement of symptoms. *See* 20 C.F.R. § 404.1508 *(emphasis added)*. Further, Plaintiff bears the burden of proving disability through step four of the sequential evaluation process, including his residual functional capacity. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

Plaintiff has failed to submit sufficient medical evidence in support of his claimed disability and relies on his subjective reports of disabling symptoms. This is insufficient.

In summary, because of the lack of medical evidence showing disability and in light of

the opinions of the non-examining state agency physicians, even after a review of the opinion of the consultative physician, Dr. Fisher, I conclude there is substantial evidence to support the decision of the ALJ that Plaintiff has failed to show he was disabled as of his date of last insured. Therefore, Plaintiff is not entitled to disability and disability insurance benefits under Title II.

Disability from Date of Last Insured to the Present

I now turn to the issue of whether there is substantial evidence to support the decision of the ALJ that plaintiff is not now disabled. Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F. 2d 359 (6th Cir. 1978). For the reasons that follow, I conclude there is not sufficient evidence to support that conclusion and will therefore recommend remand to the Commissioner for further proceedings consistent with this opinion.

1. The Residual Functional Capacity Assessment

The ALJ, in reaching the conclusion that Plaintiff can perform a limited range of light work, reasons as follows:

> As for the opinion evidence, it is the opinion of the State Agency designated physicians that the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday, and can sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. He is limited in his ability to push/pull with the lower extremities. He can never climb ladders/ropes/scaffolds, and can occasionally climb stairs. He can occasionally balance, stoop, kneel, crouch, and crawl. The State Agency designated physicians found the claimant had no manipulative, visual, communicative, or environmental limitations (Exhibit 6F).

The claimant underwent a consultative examination by Timothy Fisher, D.O., on June 15, 2005 (Exhibit 5F). At that time, the claimant had hypertrophy of the calves and atrophy of the proximal upper and lower extremities. There was a mild difficulty getting from chair to examination table. His gait was abnormal. Cranial nerves II through XII appeared intact. It was not difficult to perform a heel-toe gait, but he could not squat. He could balance himself on one leg. A left knee x-ray showed some mild thinning of the medial compartment. There was a bony cyst noted in the distal femur measured approximately 2x5 cm. Dr. Fisher's assessment was limb-girdle muscular dystrophy, and tobacco abuse. Dr. Fisher noted that the claimant had marked proximal weakness of the bilateral upper and lower extremities. He had hypertrophic gastrocnemius bilaterally consistent with muscular dystrophy. There was a waddling gait and he will have difficulty doing jobs which require any change in position from sitting to standing position. He should, however, be able to perform jobs which require ambulating fairly well. He will have difficulty lifting with his proximal upper extremity weakness especially lifting above his chest region (Exhibit 5F). As this opinion is consistent with the objective evidence of record, it is given great weight.

(Tr. 18).

Ultimately the ALJ concludes Plaintiff, with his exertional and non-exertional limitations, has the residual functional capacity for a significant range of light work which is consistent with the findings of the State Agency designated physicians. As stated above, however, two of those State Agency physicians opined only as to Plaintiff's condition prior to his date of last insured. Only Dr. Eales concludes Plaintiff can manage a limited range of light work as of the date of his opinion. He offers this opinion after a review of the then existing record. When one looks closely at the record on which he bases this opinion, the most restrictive opinion appears to be that of Dr. Fisher, the consultative physician. The even more restrictive opinion of the treating neurologist, Dr. Howard, had not yet been given.

Timothy Fisher, D.O. consultatively examined Plaintiff on June 15, 2005, for Tennessee Disability Determination Services (Tr. 150-154). Plaintiff reported a history of muscular dystrophy since age 13 (Tr. 150). Dr. Fisher noted Plaintiff had obvious muscular dystrophy; had

hypertrophy of the calves and atrophy of the proximal upper and lower extremities.  There was

mild difficulty getting from chair to examination table.  Plaintiff's gait was abnormal, notable for

use of his body to propel his legs forward.  Plaintiff had to use his hands to push his [sic] self up

to stand from a sitting position (Tr. 152). Dr. Fisher assessed limb-girdle muscular dystrophy and

found Plaintiff had marked proximal weakness of the bilateral upper and lower extremities.  He

had hypertrophic gastrocnemius bilaterally, consistent with muscular dystrophy.  He had a

waddling gait (Tr. 153-154).  He opined that Plaintiff would have difficulty performing jobs that

require position changes from sitting to standing.  Dr. Fisher noted Plaintiff should be able to

perform jobs requiring ambulation fairly well but further noted Plaintiff had atrophy of the

pectoralis muscles bilaterally.   He also reported that Plaintiff would have difficulty lifting, given

his proximal upper extremity weakness, especially with lifting above the chest region (Tr. 154).

After reviewing this opinion, Dr. Eales concluded Plaintiff still had the ability to perform light

work.

As Plaintiff notes, light work is defined in 20 CFR § 404.1567(B)

(b) Light work. Light work involves lifting no more than 20 pounds at a time with
frequent lifting or carrying of objects weighing up to 10 pounds. Even though the
weight lifted may be very little, a job is in this category when it requires a good
deal of walking or standing, or when it involves sitting most of the time with
some pushing and pulling of arm or leg controls. To be considered capable of
performing a full or wide range of light work, you must have the ability to do
substantially all of these activities. If someone can do light work, we determine
that he or she can also do sedentary work, unless there are additional limiting
factors such as loss of fine dexterity or inability to sit for long periods of time.

In looking at the record as a whole, it seems unlikely Plaintiff can actually perform light

work when one considers the opinion of Dr. Fisher and the opinion later given by Drs. Greer and

Hodges, the treating Neurologists.  Greer and Hodges' recommendation of braces for plaintiff's

ankles and the use of scooters, and wheelchairs, the use of a shower chair and raised commode (Tr. 164,165) all seem inconsistent with a finding of someone able to perform a limited range of light work as defined by the regulations. The ALJ articulates reasons in his opinion why he did not agree with the assessment of these treating physicians and the reasons expressed appear adequate to allow him to decline to give them controlling weight. However, the opinion does not make clear what weight he did give to their opinions. Because these opinions are the opinions of the treating Neurologists who are specialists, they would likely have a bearing on the opinion of a reviewing State Agency physician in giving an opinion as to a Plaintiff's residual functional capacity. I therefore conclude that the opinion of Dr. Eales, based on an incomplete record, does not support the conclusion of the ALJ that Plaintiff can perform a limited range of light work.

2. The Hypothetical Question to the VE

The Sixth Circuit has consistently recognized the use of VE testimony to show that a claimant can perform other work which exists in the national economy. *Davis v. Secretary of Health and Human Services*, 915 F.2d 186, 189 (6th Cir 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777,779 (6th Cir 1987). "The administrative law judge may ask a vocational expert hypothetical questions, provided the questions are supported by evidence in the record." *Hardaway v. Secretary of Health and Human Services*, 823 F.2d 922, 927-928 (6th Cir 1987). However, "[i]f the Secretary seeks to rely on VE testimony to carry his burden of proving the existence of a substantial number of jobs that claimant can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes the claimant in all significant, relevant respects . . ." *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994).

The Commissioner asserts that the hypothetical question presented to the VE in this case incorporated plaintiff's limitations which are supported by substantial evidence of record, and, therefore, the VE's response constitutes substantial evidence supporting the Commissioner's decision. *See Hall v. Bowen*, 837 F.2d 272, 274-275 (6th Cir 1988). I disagree.

In this case, the hypothetical question does not accurately describe Plaintiff in all significant, relevant respects. In his question to the VE, the ALJ adopts the functional capacity assessment of the non-examining state agency physician, who had reviewed the record including Dr. Fisher's report, but without the benefit of the report of the treating Neurologists, Greer and Howard. The ALJ adds restrictions which limit the full range of light work. The Commissioner argues the VE's testimony constituted substantial evidence in support of the ALJ's finding that Plaintiff, despite his credible limitations, was not disabled. *Citing Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777 (6th Cir. 1987) (ALJ is entitled to rely on the expertise of the vocational expert) and *Casey*, 987 F.2d at 1235, ("It is well established that an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact."). I conclude it does not constitute substantial evidence to support the finding because it omits significant limitations accepted by the ALJ. Dr. Fisher made several findings which the ALJ finds to be consistent with the objective evidence of record and to which the ALJ states he gives great weight, but he did not include those findings in the question he propounded to the VE. As stated above, those findings were, ". . . the claimant had marked proximal weakness of the bilateral upper and lower extremities. He had hypertrophic gastrocnemium bilaterally consistent with muscular dystrophy. There was a waddling gait and he will have difficulty doing jobs which require any change in position from sitting to standing position. He should, however, be

able to perform jobs which require ambulating fairly well.  <u>He will have difficulty lifting with his</u> <u>proximal upper extremity weakness especially lifting above his chest region</u>" (Tr. 16) (emphasis added).   The omission of these limitations from his hypothetical, which limitations he referred to and accepted in his opinion, leads me to conclude the testimony of the VE does not provide substantial evidence to support the finding that the jobs identified can actually be performed by this Plaintiff.  There is no way for me to know if the VE would have concluded there were jobs which Plaintiff could perform if he had known Plaintiff had a waddling gait, would have difficulty doing jobs which require any change in position from sitting to standing and will have difficulty with lifting with his proximal upper extremity weakness, especially lifting above the chest region.  All of these restrictions are quoted by the ALJ, the opinion of Dr. Fisher is given great weight, yet none of these important limitations are in the hypothetical question.  The hypothetical question therefore does not accurately describe the claimant in all significant, relevant respects.

Certainly if the ALJ had credited the Plaintiff's testimony of his limitations or the findings of Dr. Howard, he would clearly not have found Plaintiff capable of light work  The fact is that light work as defined requires a good deal of walking and standing or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

Further, as discussed above, an additional and significant problem with the decision is the fact that it is based largely on a residual functional capacity assessment by a non-examining, record reviewing physician who assessed Plaintiff capable of light work but did not know of the opinion of a Neurologist and another doctor in that Neurologist's office who saw Plaintiff in December of 2005 and June of 2006 (Tr. 163-168).  There were two examinations.  At the first

examination, Dr. Greer suggested the use of ankle-foot orthosis (AFO) (foot brace), a shower chair and raised commode (Tr. 165). He appears to have suggested possible use of a wheelchair and a scooter although Plaintiff was not interested (Tr. 165). A phone call record of January 17, 2006 indicates the AFOs were not helping, found them hard to use if he drove, and hard to walk in. It was suggested the braces be taken to the orthotic shop for adjustment (Tr. 163).

In the second evaluation some six months later, June 9, 2006, Neurologist Jane Howard, M.D. assessed Plaintiff's residual functional capacity (Tr. 166). She concluded that Plaintiff could not perform any physically demanding work, and noted that Plaintiff had "no training for desk work." Dr. Howard found that Plaintiff could not stand at all during a workday and could stand at one time for 15 minutes and only sit for 60 minutes during a workday. She further opined that Plaintiff could not bend, stoop or balance. Dr. Howard also noted that Plaintiff would need to occasionally elevate his legs during a workday (Tr. 166). Those restrictions were clearly disabling. The ALJ simply stated there is no objective medical evidence in Dr. Howard's records or other medical records to indicate that Plaintiff is limited to this degree.

In summary, it is clear that the hypothetical question did not include all of limitations of Plaintiff in all significant, relevant respects and thus does not provide substantial evidence that Plaintiff can perform the jobs identified by the VE. Further, there is clear evidence Plaintiff suffers from Muscular Dystrophy. The ALJ so finds (Tr. 14). This is supported by the opinion of an expert Neurologist, Dr. Howard, confirmed by the opinion of Dr. Fisher and found in the initial evaluation of Dr. Koob. The residual functional capacity assessment on which the ALJ relied was given by a doctor who did not have the benefit of the opinion of the expert Neurologist who made her assessment after two examinations of Plaintiff in her office. In this

case there is strong evidence in the combined record of Drs. Jane Howard and David Greer that Plaintiff is disabled or at least severely limited. Plaintiff suffers from a progressively disabling disease. The record supports the view that Plaintiff's condition is deteriorating. Since I therefore conclude the opinion is not supported by substantial evidence, to the extent that it deals with his present disability under Title XVI, I must now decide the proper remedy, reversal or remand.

As set out above, the duty to weigh the medical evidence is the Commissioner's, not the Court's. Where a court determines substantial evidence does not support the Commissioner's decision, the court may reverse and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Newkirk v. Shalala,* 25 F.3d 316, 318 (6th Cir. 1994); *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994).

Because there was conflicting evidence, I decline to recommend reversal based on the record before me. I do not find that proof of disability is overwhelming, or proof of disability is strong, and evidence to the contrary is lacking. *See Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1053-54 (6th Cir. 1983). I do, however, recommend remand under Sentence Four of 42 U.S.C. § 405(g).

On remand, the Commissioner can obtain a further residual functional capacity assessment looking at the entire medical record including the opinions and findings of Dr. Howard and Dr. Greer along with the opinion of Drs. Fisher and Koop, and any further opinions given by treating or other physicians. This new residual functional capacity assessment will be based on the entire medical record.

The ALJ must also obtain another opinion from a VE based on a complete statement of all the limitations the ALJ finds credible, including all of the limitations recited by Dr. Fisher and accepted by the ALJ in his August 16, 2006 opinion.

## Conclusion

For the reasons stated herein, I conclude there is substantial evidence to support the decision of the Commissioner in denying Plaintiff Disability and Disability Insurance Benefits under Title II as of June 30, 1998, Plaintiff's date of last insured, and I therefore RECOMMEND that portion of the Commissioner's decision be AFFIRMED. For the reasons stated herein, I further RECOMMEND the Commissioner's decision denying Supplemental Security Income benefits under Title XVI be REVERSED and the case REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

I further RECOMMEND the defendant's Motion for Summary Judgment (Doc. 17) be GRANTED in part and DENIED in part; and the plaintiff's Motion for Judgment on the Administrative Record (Doc. 13) be GRANTED in part and DENIED in Part[2].


Dated: April 17, 2008                  s/William B. Mitchell Carter
                                       UNITED STATES MAGISTRATE JUDGE

---

[2]Any objections to this Report and Recommendation must be served and filed within ten (10 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).